IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TEXAS CAMPAIGN FOR THE ENVIRONMENT, | § § § | |
| Plaintiff, | § § | Civil Action No. 4:11-cv-00791 |
| v. | § § | |
| LOWER COLORADO RIVER AUTHORITY, | § § § | |
| Defendant. | § | |

## CITY OF AUSTIN D/B/A AUSTIN ENERGY'S
## UNOPPOSED MOTION TO INTERVENE AS A MATTER OF RIGHT

The City of Austin d/b/a Austin Energy ("Austin Energy") respectfully seeks to intervene in this case as a matter of right under Rule 24(a)(2), and in support thereof shows as follows:

### I.      Introduction and the Nature of Austin Energy's Interest in this Case

Plaintiff filed this lawsuit against the Lower Colorado River Authority ("LCRA") under the federal Clean Air Act, with the general goal of lowering air pollutant emissions for three coal-fired boilers used to generate electricity at the Fayette Power Project located near La Grange, Texas.  Austin Energy[1] owns an undivided fifty percent (50%) interest in two of the three Fayette Power Project coal-fired boilers that are at the center of this lawsuit.[2]  The boilers that are co-owned by Austin Energy and the LCRA are designated as Units 1 and 2.  Austin Energy has been co-owner of Units 1 and 2 since they were constructed.  These two Units

---

[1] "Austin Energy is the nation's 9th largest community-owned electric utility. [It] serve[s] more than 400,000 customers and a population of almost 1 million. [It] provide[s] service within the City of Austin, Travis County, and a small portion of Williamson County.   As a publicly owned power company and a city department, Austin Energy returns profits to the community annually. That money helps fund City services such as fire, police, EMS, parks, and libraries. The utility has provided $1.5 billion in dividends to the community since 1976.  Austin Energy powers the capital city of Texas through a diverse generation mix. [Its] portfolio includes nuclear, coal, natural gas, and renewable energy sources." http://www.austinenergy.com/About%20Us/Company%20Profile/index.htm.
[2] Document #14 at ¶3.

provide steam to power electric generating turbines and Units 1 and 2 each has greater electric generating capacity than Unit 3, which is also at issue but which is owned solely by the LCRA.[3]

Units 1, 2, and 3 operate under state-issued Air Permits ("the Permits"). If Plaintiff succeeds in obtaining the injunction it seeks then the operation of Units 1, 2, and 3 may be significantly affected and may require significant capital expenditures.  For these and all of the reasons stated herein, Austin Energy should be permitted to intervene as a matter of right.

## II.  Status of the Lawsuit

On March 7, 2011, Plaintiffs (Texas Campaign for The Environment, Environmental Integrity Project, and Environment Texas) filed their Complaint to prevent the LCRA from purportedly violating the federal Clean Air Act and exposing the public to unlawful amounts of harmful air pollution from the Fayette Power Project.[4]  On March 31, 2011, the LCRA filed a Motion to Dismiss.[5]   In its response, and in a First Amended Complaint, Plaintiff Texas Campaign for The Environment seeks to omit the other two Plaintiffs, delete certain causes of action, and add other causes of action following proper notice.[6]   LCRA then filed a Motion to Dismiss the First Amended Complaint.[7]   At the time of the filing of this motion, the LCRA's most recent Motion to Dismiss was still pending.  To date, no scheduling order or deadline for joinder of parties has been issued, and the parties' Joint Discovery/Case Management Plan was just recently submitted.[8]   As the management plan reflects, the parties do not oppose Austin Energy's intervention.  Also, Austin Energy participated in the case management conference and agrees to be bound by the case management plan and schedule negotiated by the parties.[9]

---

[3] *Id.*
[4] Document #1.
[5] Document #10.
[6] Document #s 14 and 15.
[7] Document #18.
[8] Document #23 was submitted on June 10, 2011.
[9] *Id.* at ¶ 6.

## III.    Argument

**A.    Austin Energy should be allowed to intervene as a matter of right.**

Austin Energy should be allowed to intervene as a matter of right.  The Fifth Circuit has "repeatedly recognized that '[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained.'"[10]  Similarly, the Fifth Circuit has recognized that Rule 24 is to be construed liberally, and that doubts should be resolved in favor of the proposed intervenor.[11]  With these views in mind, a party is entitled to an intervention of right if: (1) the motion to intervene is timely; (2) the potential intervenor asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene; (3) the disposition of that case may impair or impede the potential intervenor's ability to protect her interest; and (4) the existing parties do not adequately represent the potential intervenor's interest.[12]  Austin Energy meets all four requirements to intervene as a matter of right.

### 1.    Austin Energy's motion to intervene is timely.

Courts consider a variety of factors in determining whether a motion to intervene was timely.[13]  Here, the earliest possible date for intervention was when the lawsuit was filed, less than three months ago.  After conferring with City Council Members and Austin Energy's in-

---

[10] *Am. V Ships Ltd. LLC v. Nordica Eng'g Servs.,* No. 01-41462, 2002 U.S. App. LEXIS 28201 (5th Cir. 2002); *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001).

[11] *See In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009) (citing 6 Moore *et al.*, § 24.03[1][a], at 24-22).

[12] *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 422 (5th Cir. 2002).

[13] The factors for determining timeliness are: "(1) the length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it sought to intervene; (2) the prejudice that existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) whether unusual circumstances militate for or against a determination that the application is timely." *Id.*  To be clear, "[t]here are no absolute measures of timeliness; it is determined from all the circumstances." *Id.*  In addition, "[t]he requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Id.*

house counsel, and following the required City process, Austin Energy now seeks to join this action.  Austin Energy is not aware of any prejudice to the existing parties to the litigation in allowing Austin Energy to join the litigation at this point in the lawsuit as the suit is still in its initial stages.  There are no pending deadlines for joinder of parties.  Additionally, both parties have acknowledged in their filings Austin Energy's financial interest in the outcome of the case.[14]  Austin Energy is unaware of any unusual circumstances which militate against a determination that the application is timely.  Finally, this motion is filed as an unopposed motion, as both the Plaintiff and the LCRA have stated to the undersigned counsel that they do not oppose intervention by Austin Energy in this lawsuit.

### 2.   Austin Energy has an interest relating to the property and transaction that is the subject of the action.

The "interest test" is "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficient and due process."[15]  Austin Energy's concern in the outcome of this litigation is plain and valid.  Austin Energy owns an undivided fifty percent (50%) interest in two of the three units that are the subject of Plaintiff's request for injunctive relief.[16]  Austin Energy's ownership interest in this regard is "direct, substantial, [and] legally protectable."[17]  As a practical matter, involving Austin Energy is also most compatible

---

[14] *See* Certificates of Interested Persons Document #8 at p.1; Document #9 at p. 2.  LCRA identifies the City of Austin as an interested party, while Plaintiff more specifically notes that "Austin Energy, a community-owned electric utility, is a co-owner with LCRA of the FPP Units 1 and 2."  Document #9 at p. 2.

[15] *Espy*, 18 F.3d at 1207.

[16] Specifically, Plaintiff seeks to enjoin the operation of the Fayette Power Plant "except in accordance with a compliance schedule that will cause the plant to comply with the Clean Air Act, including but not limited to demonstrating compliance with the Clean Air Act Section 165, 42 U.S.C. § 7475, and meeting *best available control technology* for the control of particulate matter emissions, and complying with the State Implementation Plan and its federally enforceable and SIP-approved air quality permits in a timely manner."  Document #14 at p. 18.

[17] *Espy*, 18 F.3d at 1207; *Williams v. Bank of N.Y. Mellon*, No. 3:09-CV-1622-BH, 2010 U.S. Dist. LEXIS 70515 (N.D. Tex. July 12, 2010) (granting abatement so that co-owner of property at center of foreclosure suit could be joined as a necessary party under Rule 19); *Beutel v. Dallas County Flood Control Dist.,* 916 S.W.2d 685, 691 (Tex. App. – Waco 1996) (recognizing that a property owner, or even mere possessor of lien interest, would have obvious justiciable interest in condemnation proceeding); *see generally Spiller v. Walker,* No. A-98-CA-255-SS, 2002 U.S. Dist. LEXIS 13194 (W.D. Tex. July 19, 2002) (where plaintiffs challenged proposed pipeline project under National

with efficient and due process because negotiated or imposed changes and expenditures with regard to Units 1 and 2 would require Austin Energy's consent and participation, and because the fair process is to permit Austin Energy to be heard in its own defense.

> **3.    The disposition of the action may impair or impede Austin Energy's ability to protect its interest.**

"The third requirement of rule 24(a) is that the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect his interest."[18]  Austin Energy easily meets this factor, because if it is not a party to this action, it will not have the ability to defend claims that seek to change the operation of the co-owned Units, as compared to the Unit in which only the LCRA has an interest.  In short, without participation in the litigation, Austin Energy's ability to protect its interests will be impaired in practical ways.  For example, each co-owner can elect today to take different amounts of generation from Units 1 and 2, so an injunction affecting the operation of those units could lead to different operational impacts on Austin Energy than the LCRA.[19]  Additionally, Plaintiff seeks, among other things, to enjoin the operation of the Fayette Power Plant except in accordance with a compliance schedule that will cause the plant to meet best available control technology for the control of particulate matter emissions."[20]  If such relief is granted, it could

---

Environmental Policy Act, district court allowed Austin Energy of Austin and LCRA to intervene as plaintiffs because the pipeline runs through Austin Energy and the LCRA managed a large portion of the water supply over which the pipeline travels).

[18] *Epsy*, 18 F.3d at 1207; *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 422 (5th Cir. 2002).

[19] Austin Energy relies on its own unique portfolio of generation assets to participate in the ERCOT Nodal Market and serve its customers.  The portfolio includes natural gas-fired power plants, plants powered by coal and nuclear fuel, and renewable energy sources such as wind and solar power. Units 1 and 2 at the Fayette Power Project are utilized as base load resources supplying electricity on a continuous basis.  These units are more reliable and have higher availability factors than intermittent resources such as wind and solar. Therefore, if Units 1 and 2 are required to make operational changes and incur additional operating costs as a result of this suit, it will impact how Austin Energy utilizes all of its electric generating resources.   Austin Energy's interests in this regard are unique to it and unrelated to the LCRA, which has its own unique set of generation assets.

[20] Document #14 at p. 18.

5

negatively impact Austin Energy's core purpose — to provide energy service to more than 400,000 customers of the Austin metropolitan area.

> **4.      Austin Energy's interests are not adequately represented by the existing parties to the suit.**

The burden to demonstrate the final Rule 24(a) factor of inadequate representation is "minimal," and the Fifth Circuit has held that the applicant need only show that the representation "may be" inadequate.[21]  The LCRA cannot adequately represent Austin Energy's interests in this case because an injunction affecting the plant's operation could lead to different impacts on the LCRA and Austin Energy because of their different ownership interests in the three Units and different operational decisions, as stated above.  In other words, if Plaintiff is successful, an injunction could affect Units 1, 2 and 3 differently and/or impact the way Austin Energy elects to take generation from the units and from the rest of its generation fleet.  It is these potentially competing interests that render the LCRA unable to adequately represent Austin Energy's interest.

**B.      Austin Energy is prepared to file a responsive pleading.**

While Federal Rule of Civil Procedure 24(c) requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought," courts have held that this requirement may be satisfied by a motion to intervene which clearly spells out the intervenor's position on the subject matter litigation.[22]  The present motion sets out the interests Austin Energy seeks to protect and indicates that Austin Energy will oppose the relief Plaintiff seeks.  If Austin Energy is permitted to intervene, it will file a motion to dismiss, adopting the arguments in the LCRA's pending motion to dismiss, and suggesting in the

---

[21] *Epsy*, 18 F.3d at 1207 (*citing Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10, 30 L. Ed. 2d 686, 92 S. Ct. 630 (1972)).

[22] FED. R. CIV. P. 24(c).   *See e.g., Piambino v. Bailey*, 757 F.2d 1112, 1121 (11th Cir. 1985); *Howse v. S/V Canada Goose I*, 641 F.2d 317, 319 & n.3 (5th Cir. 1981).

alternative that the Court consider abstaining under the *Burford* doctrine.[23]  Austin Energy is also prepared to file all preliminary documents required by the Court promptly after an Order granting Austin Energy leave to intervene is entered.

WHEREFORE, the City of Austin d/b/a Austin Energy respectfully requests that this Court grant it leave to intervene as of right as a defendant pursuant to Federal Rule of Civil Procedure 24(a), and accordingly permit it to file a responsive pleading to Plaintiff's Original Complaint.

Dated:  June 14, 2011

Respectfully submitted,

BROWN McCARROLL, L.L.P.


By: /s/ *Thomas H. Watkins*
    THOMAS H. WATKINS
    Attorney -in- Charge
    State Bar No. 20928000
    Southern District of Texas I.D. No. 15332
    Email: twatkins@brownmccarroll.com
    Lorinda Holloway
    State Bar No. 00798264
    Southern District of Texas ID No. 37157
    Email: lholloway@brownmccarroll.com
    111 Congress Avenue, Suite 1400
    Austin, Texas 78701
    (512) 472-5456)
    (512) 479-1101 (facsimile)

    ATTORNEYS FOR THE CITY OF AUSTIN
    D/B/A AUSTIN ENERGY

---

[23] The purpose of the *Burford* abstention doctrine is to support abstention when a case presents either difficult questions of state law bearing on policy problems of substantial import whose importance transcends the results in the case, or when adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial policy concern.  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996).

CERTIFICATE OF CONFERENCE

I hereby certify that on May 24, 2011, I conferred with James Blackburn, counsel for Plaintiff, regarding the relief requested in the City of Austin d/b/a Austin Energy's Motion to Intervene.  Plaintiff is not opposed to intervention by Austin Energy.  I further certify that on May 24 and 25, 2011, I conferred with counsel for Defendant, Lower Colorado River Authority. Defendant is not opposed to intervention by Austin Energy.

/s/ *Thomas H. Watkins*_____
THOMAS H. WATKINS

CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed pursuant to the electronic filing requirements of the United States District Court for the Southern District of Texas and served on all parties/attorneys of record by the Court's CM/ECF System or by the method designated below on the 14th day of June,  2011:

| | |
|---|---|
| James B. Blackburn<br>Charles Irvine<br>BLACKBURN CARTER, P.C.<br>4709 Austin Street<br>Houston, TX  77004<br><br>**Counsel for Plaintiff, Texas Campaign for The Environment** | Joseph R. Knight<br>Pamela M. Giblin<br>Derek R. McDonald<br>Baker Botts, LLP<br>98 San Jacinto Blvd., Suite 1500<br>Austin, TX  78701-4039<br><br>**Counsel for Defendant, Lower Colorado River Authority** |
| *Via E-Mail*: cm4141@txs.uscourts.gov<br>Rhonda Moore-Konieczny<br>United States Courthouse<br>515 Rusk Avenue, Room 9010C<br>Houston, Texas 77002<br><br>**Case Manager to Judge Gray H. Miller** | |

 /s/ *Thomas H. Watkins*_____
THOMAS H. WATKINS