IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

TEXAS CAMPAIGN FOR THE §
ENVIRONMENT, §
§
§
*Plaintiff,* §
§
vs. § Civil Action No. 4:11-cv-00791
§
LOWER COLORADO RIVER AUTHORITY, §
§
*Defendant.* §
§

## CONSENT DECREE

WHEREAS, on July 14, 2010, the Environmental Integrity Project ("EIP"), Texas Campaign for the Environment ("TCE"), and Environment Texas issued a notice of intent to sue the Lower Colorado River Authority ("LCRA") for alleged violations of the federal Clean Air Act (the "CAA" or "the Act"), 42 U.S.C. § 7401, *et seq.*, at LCRA's Fayette Power Project ("FPP" or "Power Plant"), located in Fayette County, Texas (the "July 14, 2010 NOI");

WHEREAS, on March 7, 2011, EIP, TCE, and Environment Texas filed their Original Complaint against LCRA in the United States District Court for the Southern District of Texas (Civil Action No. 4:11-cv-00791) seeking injunctive relief and the assessment of civil penalties pursuant to the citizen suit provision, 42 U.S.C. § 7604, of the Act (the "Original Complaint");

WHEREAS, on April 21, 2011, TCE filed its First Amended Complaint against LCRA seeking injunctive relief and the assessment of civil penalties ("First Amended Complaint,"

which is referred to as the "Complaint"), alleging the following causes of action, as more specifically set forth in the Complaint:

a. LCRA violated and continues to violate heat input limits, which are emission standards or limitations on the Power Plant's three main coal-fired boilers, Units 1, 2, and 3 ("Cause of Action 1");

b. LCRA violated and continues to violate the Clean Air Act's Prevention of Significant Deterioration ("PSD") requirements by making major modifications to the power plant's main coal-fired boilers and failing to obtain necessary permits, install best available control technology, reduce emissions, and comply with requirements for monitoring, record-keeping and reporting ("Cause of Action 2");

c. LCRA violated and continues to violate annual particulate matter emission limits contained in the Power Plant's Flexible Permit No. 51770/PSD-TX-486M3 ("Cause of Action 3"); and

d. LCRA violated and continues to violate the Unit 3 hourly particulate matter emission limit of 142.1 lbs/hour contained in in the Power Plant's Unit 3 preconstruction permit ("Cause of Action 4");

WHEREAS, on June 15, 2011, the City of Austin intervened in this civil action as a defendant ("City of Austin," which together with LCRA shall be hereafter referred to as "Defendants");

WHEREAS, by memorandum and order dated March 28, 2012, the court granted in part LCRA's Motion to Dismiss the First Amended Complaint, dismissed Causes of Action 1, 2, and 4 asserted by TCE in the Complaint, and allowed discovery to proceed on Cause of Action 3;

2

WHEREAS, on June 8, 2012, TCE issued a second notice of intent to sue LCRA for additional alleged violations of the Act at the Fayette Power Project (the "June 8, 2012 NOI"), alleging the following claims, as more specifically alleged in the June 8, 2012 NOI:

a.  LCRA violated and continues to violate applicable opacity limits for Units 1, 2, and 3; and

b.  LCRA violated and continues to violate the hourly particulate matter emission limit contained in the Power Plant's Flexible Permit No. 51770/PSD-TX-486M3;

WHEREAS, Defendants do not admit any liability arising out of the transactions or occurrences alleged in the Original Complaint, Complaint, the July 14, 2010 NOI, and the June 8, 2012 NOI;

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith in settlement of disputed claims and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest;

WHEREAS, LCRA filed permit applications with the Texas Commission on Environmental Quality, including, but not limited to: LCRA's request dated January 27, 2011, to have the Plantwide Applicability Limit ("PAL") condition in Permit No. 51770/PSD-TX-486M3 separated from that permit and issued as a "stand-alone" PAL permit, which was granted by the TCEQ Executive Director on April 14, 2011 as Permit No. PAL 2; LCRA's application for amendment of Permit No. 51770/PSD-TX-486M3 dated January 31, 2011, as supplemented (the "De-Flex Application"), which was granted by the TCEQ by Order dated December 12, 2012; LCRA's application for amendment of Permit No. 51770/PSD-TX-486M3 dated January 4, 2011, as supplemented, to authorize certain emissions associated with maintenance,

3

startup, and shutdown (the "MSS Application"); and LCRA's application for renewal of Permit No. 51770/PSD-TX-486M3 dated September 18, 2012, as supplemented (collectively, the "Permit Applications");

WHEREAS, EIP, on behalf of itself and/or other parties, has protested LCRA's Permit Applications;

WHEREAS, the Parties consent to the entry of this Consent Decree without further trial, argument, or appeal;

WHEREAS, pursuant to 42 U.S.C. § 7604(c)(3) of the CAA, the Parties are concurrently serving a copy of this Consent Decree to the United States Department of Justice ("DOJ") and to the United States Environmental Protection Agency ("EPA") for the statutorily-mandated forty-five (45) day review period.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

## I.
## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Parties and the subject matter of this action pursuant to the CAA, 42 U.S.C. § 7604, and pursuant to the federal jurisdiction statute, 28 U.S.C. § 1331. Venue is proper in this judicial district under the CAA, 42 U.S.C. § 7604(c), and under the federal venue statute, 28 U.S.C. § 1391.

2.      For purposes of this Consent Decree, or any action to enforce this Consent Decree, the Parties consent to the Court's jurisdiction and any such action and consent to venue in this judicial district.

3.    The obligations of this Consent Decree apply to and are binding upon the Parties and their respective successors, assigns, or other entities or persons otherwise bound by law.

4.    Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Consent Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.    "CEMS" shall mean continuous emissions monitoring system.

b.    "Consent Decree" or "Decree" shall mean this Consent Decree.

c.    "Date of Lodging" shall mean the date the Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Southern District of Texas.

d.    "Day" shall mean a calendar day unless expressly stated to be a business day.

e.    "Defendants" shall mean Lower Colorado River Authority and the City of Austin;

f.    "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

g.    "Effective Date" shall have the definition provided in Paragraph 36.

h.    "Flexible Permit" shall mean Permit No. 51770/PSD-TX-486M3 issued by the TCEQ to LCRA.

i. "Facility" or "FPP" shall mean LCRA's Fayette Power Project located in Fayette County, Texas. The Facility consists of three electric utility steam generating units known as Unit 1, Unit 2 and Unit 3 and associated emissions sources.

j. "lb/MMBtu" shall mean pound per million British thermal unit.

k. "MATS" shall mean the Mercury and Air Toxics Standards, adopted by EPA at 77 Fed. Reg. 9304, *et seq.* (February 16, 2012).

l. "MATS Limit" shall mean the emission limits established for FPP Unit 1, Unit 2 and Unit 3 in Paragraph 10.

m. "Paragraph" shall mean a portion of this Decree identified by an arabic numeral.

n. "Particulate Matter" or "PM" shall mean any material, except uncombined water, that exists as a solid or liquid in the atmosphere or in a gas stream at standard conditions.

o. "Parties" shall mean the Plaintiffs and LCRA.

p. "Performance Standards" shall mean the emission limits established for FPP Unit 1, Unit 2 and Unit 3 in Paragraph 6.

q. "Plaintiffs" shall mean TCE and EIP.

r. "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

s. "Startup, and shutdown and malfunction" or "SSM" shall mean startup and shutdown as each such term is defined in MATS as adopted by EPA at 77 Fed. Reg. 9304, 9486, *et seq.* (February 16, 2012) and malfunction as such term is defined at 40 C.F.R. 63.2, which definitions are set forth herein as follows:

6

(i) Startup means either the first-ever firing of fuel in a boiler for the purpose of producing electricity, or the firing of fuel in a boiler after a shutdown event for any purpose. Startup ends when any of the steam from the boiler is used to generate electricity for sale over the grid or for any other purpose (including onsite use);

(ii) Shutdown means the cessation of operation of a boiler for any purpose. Shutdown begins either when none of the steam from the boiler is used to generate electricity for sale over the grid or for any other purpose (including onsite use), or at the point of no fuel being fired in the boiler, whichever is earlier. Shutdown ends when there is both no electricity being generated and no fuel being fired in the boiler; and

(iii) Malfunction means any sudden, infrequent, and not reasonably preventable failure of air pollution control and monitoring equipment, process equipment, or a process to operate in a normal or usual manner which causes, or has the potential to cause, the emission limitations in an applicable standard to be exceeded. Failures that are caused in part by poor maintenance or careless operation are not malfunctions.

t. "Stack Test" shall mean performance testing conducted for the purposes of determining compliance with PM emission limits applicable to Unit 1, Unit 2 or Unit 3. The Stack Test emission rate for each unit shall be the arithmetic average of all valid runs for each unit conducted during the Stack Test.

u. "Standard Operation" shall mean the period of time when steam from the Unit 1, Unit 2 or Unit 3 boiler is used to generate electricity for sale over the grid or for any other purpose, including on-site use. Standard Operation shall not include periods of SSM (defined *supra*).

v.      "TCEQ" shall refer to the Texas Commission on Environmental Quality and any of its successor departments or agencies.

5.      The definitions of terms in this Consent Decree shall only apply to the Performance Standards and MATS Limit established under this Consent Decree and shall not necessarily apply to any existing or future emission rates, standards or requirements established by the TCEQ.

IV.
LCRA'S OBLIGATIONS

A.      Performance Standards

6.      Commencing on December 31, 2013, LCRA agrees to meet the following Performance Standards at FPP:

a.      For Unit 1 and Unit 2, an emission limit of 0.04 lb/MMBtu total PM (filterable and condensable) (30-day rolling average); and

b.      For Unit 3, emission limits of (i) 0.04 lb/MMBtu total PM (filterable and condensable) (30-day rolling average); and (ii) 0.03 lb/MMBtu total PM (filterable and condensable) (30-day rolling average) excluding hours of operation following a "cold start" until Unit 3 is released to the LCRA Generation Desk for automatic dispatch.

7.      LCRA's compliance with the Performance Standards set forth in Paragraph 6.a. and 6.b(i) shall be based on a 30-day rolling average during Standard Operation. LCRA's compliance with the Performance Standard set forth in Paragraph 6.b(ii) shall be based on a 30-day rolling average during Standard Operation but excluding hours of operation following a cold start until Unit 3 is released to the LCRA Generation Desk for automatic dispatch.

8.     For the time period between December 31, 2013 and December 31, 2014, LCRA shall use the total PM emission rate from the most recent and representative Stack Test for each unit for the purpose of determining compliance with the Performance Standards.

9.     Commencing after December 31, 2014, compliance with the Performance Standards will be determined by adding the filterable PM, 30-day rolling average emission rate for each unit identified by the filterable PM CEMS on each unit to the condensable PM emission rate for that unit identified through the most recent and representative Stack Test for that unit.

B.     MATS Limit

10.     Commencing on December 31, 2013, LCRA agrees to meet the following MATS limit at FPP:

a.     For Unit 1, Unit 2 and Unit 3, an emission limit of 0.03 lb/MMBtu filterable PM (30-day rolling average).

11.     LCRA's compliance with the MATS limit shall be based on a 30-day rolling average during Standard Operation in accordance with MATS requirements as adopted by EPA at 77 Fed. Reg. 9304, *et seq.* (February 16, 2012).

12.     Commencing on December 31, 2013, LCRA agrees to utilize only clean fuels, specifically either distillate oil or natural gas at LCRA's discretion, during periods of Startup, as such term is defined in MATS as adopted by EPA at 77 Fed. Reg. 9304, 9486, *et seq.* (February 16, 2012).

C.     Particulate Matter Compliance Monitoring

13.     On or before November 1, 2014, LCRA agrees to install a filterable PM CEMS. LCRA agrees to operate the filterable PM CEMS at all times, except during malfunction, repairs and required quality assurance/quality control ("QA/QC") activities. Emissions from Unit 1,

9

Unit 2, and Unit 3 during periods of startup, shutdown, or malfunction as those terms are defined in MATS as adopted by EPA at 77 Fed. Reg. 9304 *et seq.* (February 16, 2012), shall not be counted toward compliance with Performance Standards and/or MATS Limit.

14.     On or before September 1, 2014, LCRA agrees to conduct PM Stack Tests for a minimum of three (3) two-hour test runs for each unit (i.e., Unit 1, Unit 2 and Unit 3). The Stack Test for each unit will be used to identify the Stack Test emission rate for condensable PM for that unit. A correlation of the PM CEMS data to manual reference methods data will be performed according to 40 C.F.R. Part 60, Appendix B, Performance Specification 11. 40 C.F.R. Part 51, Appendix M, Reference Method 202 or 40 C.F.R. Part 60, Appendix A-3, Reference Method 5B, modified to include back-half, will be used for condensable PM during the Stack Tests. Reference Method 5B will be used for filterable PM during the Stack Tests. The Stack Test protocol will conform to applicable EPA and TCEQ requirements and guidance.

15.     LCRA agrees to provide to Plaintiffs a copy of the 2014 Stack Tests reports. LCRA also agrees to provide to Plaintiffs quarterly PM CEMS data, unless applicable Title V requirements require that such data be reported to the TCEQ and Plaintiffs have public access to such data. LCRA agrees not to claim confidentiality for quarterly PM CEMS data.

D.     Permitting

16.     On or before September 30, 2013, LCRA shall submit an application to incorporate the Performance Standards, MATS Limit, and associated compliance monitoring methods into the Title V operating permit for FPP.

10

A.    Release and Covenant Not To Sue

17.    The entry of the Consent Decree shall fully resolve any and all claims in the Complaint, the July 14, 2010 NOI, and the June 8, 2012 NOI. Plaintiffs release Defendants and covenant not to sue Defendants for any and all claims alleged in the Original Complaint, the Complaint, the July 14, 2010 NOI, and the June 8, 2012 NOI.

B.    Future Cooperation

18.    Plaintiffs agree not to oppose permit actions or file complaints, or encourage others to do so, based on the claims resolved in this Consent Decree.

19.    EIP agrees to cease its opposition, as well as that of the clients it represents, and withdraw any comments and hearing requests to pending permit applications involving the Flexible Permit, including TCEQ Docket No. 2012-2138-AIR ("De-flex Application"), and the subsequent expected amendment to incorporate planned maintenance, startup and shutdown emissions ("MSS Application"), and application for renewal of Permit No. 51770/PSD-TX-486M3 dated September 18, 2012.

20.    Notwithstanding paragraphs 18 and 19, EIP expressly reserves the right to oppose aspects of LCRA's Prevention of Significant Deterioration ("PSD") permit that are not resolved in this Consent Decree. EIP expressly reserves the right to oppose LCRA's renewal of any plantwide cap that would allow for future modifications to be made that avoid federal PSD review in a manner that does not meet the requirements of approved plantwide applicability limit ("PAL") rules. Further, this Consent Decree does not limit any right that EIP may have under federal or state law to enforce the provisions of this Consent Decree.

21. Any notifications under this Consent Decree shall be directed to the individuals at the addresses specified below by United States Mail and e-mail, unless these individuals or their successors give notice of a change to the other Parties in writing:

As to Plaintiffs:

Ilan Levin
Associate Director
Environmental Integrity Project
1303 San Antonio Street, Suite 200
Austin, TX 78701
E-mail: ilevin@environmentalintegrity.org

Eric Schaeffer
Executive Director
Environmental Integrity Project
One Thomas Circle, NW, Ste. 900
Washington, DC 20009
E-mail: eschaeffer@environmentalintegrity.org

As to LCRA:

Patricia Hershey
Associate General Counsel
Lower Colorado River Authority
P.O. Box 220
Austin, TX 78767-0220
E-mail: patti.hershey@lcra.org

and

Derek R. McDonald
Baker Botts L.L.P.
98 San Jacinto Blvd.
Suite 1500
Austin, TX 78701
E-mail: derek.mcdonald@bakerbotts.com

22.     The Parties agree to cooperate in good faith in order to obtain the Court's review and entry of this Consent Decree.

23.     This Consent Decree constitutes the final, complete and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree, and supersedes all prior agreements and understandings among the Parties related to the subject matter herein. No document, representation, inducement, agreement, understanding, or promise constitutes any part of this Consent Decree or the settlement it represents, nor shall they be used in construing the terms of this Consent Decree.

24.     The failure of any Party to comply with any requirement contained in this Consent Decree will not excuse any Party's obligation to comply with other requirements contained herein.

25.     Modifications to this Consent Decree may be made only upon written agreement of the Parties which shall be filed with the Court. Pursuant to 42 U.S.C. § 7604(c)(3), the United States shall be provided with the opportunity to review and comment upon any proposed modification to this Consent Decree.

26.     This Consent Decree shall remain an enforceable order of the Court until terminated pursuant to this Paragraph. Any party may move for termination of this Consent Decree once LCRA has incorporated its provisions into the Title V operating permit for FPP. If no party moves for termination, the Consent Decree shall terminate automatically by its own terms on December 31, 2018.

27.     Until termination of this Consent Decree, this Court shall retain jurisdiction over both the subject matter of this Consent Decree and the Parties to this Consent Decree to enforce the terms and conditions of this Consent Decree. During the term of this Consent Decree, any

Party to the Consent Decree may apply to the Court for any relief necessary to construe or effectuate this Consent Decree. Prior to applying to the Court for relief, the Parties agree to meet and confer to determine whether the dispute can be resolved through informal negotiations among the Parties. As part of the meet and confer obligation, the Parties shall discuss whether to submit their dispute to a mutually-agreed-upon alternative dispute resolution forum rather than seeking Court intervention.

28.    LCRA's performance of its obligations hereunder may be excused by force majeure. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of LCRA, that delays or prevents the performance of any obligation under this Consent Decree despite LCRA's best efforts to fulfill the obligation. "Force majeure" does not include unanticipated or increased costs or expenses associated with, or LCRA's financial inability to perform, any obligation under this Consent Decree. "Best efforts to fulfill the obligation" include using best efforts to anticipate any potential Force Majeure event and to address the effects of any such event (a) as it is occurring and (b) after it has occurred, such that the delay or violation is minimized to the greatest extent possible.

29.    Notice of Force Majeure Events. If any event occurs or has occurred as to which LCRA intends to assert a claim of Force Majeure, LCRA shall notify the Plaintiffs in writing as soon as practicable, but in no event later than twenty-one (21) business days following the date LCRA first knew, or by the exercise of due diligence should have known, that the event caused or may cause such delay or violation. In this notice, LCRA shall reference this Paragraph of this Consent Decree and describe the anticipated length of time that the delay or violation may persist, the cause or causes of the delay or violation, all measures taken or to be taken by LCRA to prevent or minimize the delay or violation, the schedule by which LCRA proposes to

implement those measures, and LCRA's rationale for attributing a delay or violation to a Force Majeure Event. LCRA shall adopt all reasonable measures to avoid or minimize such delays or violations. LCRA shall be deemed to know of any circumstance which LCRA or any entity controlled by LCRA knew or should have known. If LCRA materially fails to comply with the notice requirements of this paragraph, the Plaintiffs may void LCRA's claim for Force Majeure as to the specific event for which LCRA has failed to comply with such notice requirement. If the Plaintiffs agree that a delay in performance has been or will be caused by a Force Majeure Event, the Parties shall stipulate to an extension of deadline(s) for performance of the affected compliance requirement(s) by a period equal to the delay actually caused by the event. Such agreement shall be in writing, and signed by all Parties. If Plaintiffs do not accept LCRA's claim of Force Majeure, or if the Plaintiffs and LCRA cannot agree on the length of the delay or the extent of relief required to address the delay actually caused by the Force Majeure Event, the matter shall be resolved in accordance with the Dispute Resolution provisions of this Consent Decree. In any dispute regarding Force Majeure, LCRA shall bear the burden of proving that any delay in performance or any other violation of any requirement of this Consent Decree was caused by or will be caused by a Force Majeure Event. LCRA shall also bear the burden of proving that LCRA gave the notice required by this paragraph and the burden of proving the anticipated duration and extent of any delay(s) attributable to a Force Majeure Event.

30. Each undersigned representative of the Parties certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this agreement. Plaintiffs represent they have no knowledge of any other party that intends to sue any other party based on the claims in the June 8, 2012 NOI.

31. This Consent Decree may be signed in counterparts.

32.     The Parties shall bear their own costs of this action, including attorneys' fees.

33.     It is ordered that LCRA's Unopposed Motion to Substitute Court Papers, or, Alternatively, Opposed Motion to Seal, Docket Entry 42, is granted as to the unopposed motion to substitute court papers. The clerk of the Court shall immediately substitute for the original Docket Entries 40 and 40(1), the redacted versions of the same that were filed with LCRA's Motion to Substitute, and then place the original Docket Entries 40 and 40(1) under seal.

34.     Any relief requested in this action and not granted herein is denied. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court in the above-referenced civil action.

## VII.
### EFFECTIVE DATE

35.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

IT IS SO ORDERED.

Dated and entered this 20th day of February, 2013.

The Honorable Gray H. Miller
United States District Judge

17

THE UNDERSIGNED PARTIES enter into this Consent Decree and submit it to this Court for approval and entry.

FOR THE TEXAS CAMPAIGN FOR THE ENVIRONMENT:

Dated: January 2 , 2013

Robin Schneider
Executive Director

THE UNDERSIGNED PARTIES enter into this Consent Decree and submit it to this Court for approval and entry.

FOR THE ENVIRONMENTAL INTEGRITY PROJECT:

Dated: January 2, 2013

Ilan Levin
Associate Director

THE UNDERSIGNED PARTIES enter into this Consent Decree and submit it to this Court for approval and entry.

FOR THE LOWER COLORADO RIVER AUTHORITY:

Dated: December 31 , 2012

Rebecca S. Motal
General Manager

APPROVED AS TO FORM:

BAKER BOTTS L.L.P.

By: /s/ _____

Joseph R. Knight
Attorney-in-Charge
State Bar No. 11601275
Southern District No. 23406
Pamela M. Giblin
State Bar. No. 07858000
Southern District No. 14764
Derek R. McDonald
State Bar No. 00786101
Southern District No. 18546
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701-4039
Telephone: (512) 322-2500
Facsimile: (512) 322-8322
joe.knight@bakerbotts.com
pam.giblin@bakerbotts.com
derek.mcdonald@bakerbotts.com

ATTORNEYS FOR DEFENDANT
LOWER COLORADO RIVER AUTHORITY

APPROVED AS TO FORM:

ENVIRONMENTAL INTEGRITY PROJECT

By: <u>by permission</u>
    Ilan Levin *
    State Bar No. 00798328
    Gabriel Clark-Leach *
    State Bar No. 24069516
    1303 San Antonio Street, Suite 200
    Austin, Texas 78701
    Telephone: (512) 637-9477
    Facsimile: (512) 584-8019
    ilevin@environmentalintegrity.org
    gclark-leach@environmentalintegrity.org
* Admitted *Pro Hac Vice*

ATTORNEYS FOR PLAINTIFF
TEXAS CAMPAIGN FOR THE ENVIRONMENT

APPROVED AS TO FORM:

BROWN MCCARROLL LLP

By: by permission

    Thomas H. Watkins
    State Bar No. 20928000
    Southern District No. 15332
    Lorinda Holloway
    State Bar No. 00798264
    Southern District No. 37157
    111 Congress, Suite 1400
    Austin, Texas 78701
    Telephone: (512) 472-5456
    Facsimile: (512) 479-1101
    twatkins@brownmccarroll.com
    lholloway@brownmccarroll.com

ATTORNEYS FOR CITY OF AUSTIN\*
\*will be ratified at January 17, 2013 City Council
meeting