UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TEXAS CAMPAIGN FOR THE ENVIRONMENT, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-791 |
| | § | |
| LOWER COLORADO RIVER AUTHORITY, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

Pending before the court is defendant Lower Colorado River Authority's ("LCRA") motion to terminate its consent decree.  Dkt. 70.  Plaintiff has responded.  Dkt. 71.  After considering the motion, response, reply, and the consent decree, the court finds that the motion to terminate the consent decree should be GRANTED.

## I. BACKGROUND

The facts of this case that led to the consent decree have been outlined in detail in a prior order by this court, and detailing them is unnecessary to resolve this motion.  *See* Dkt. 53 at 2–5. On February 20, 2013, this court entered a consent decree that imposed various obligations on the Lower Colorado River Authority's ("LCRA") operation of its Fayette Power Project ("FPP") located in Fayette County.  According to LCRA, "[p]aragraph 16 of the consent decree required LCRA to submit an application to the Texas Commission on Environmental Quality ("TCEQ") by September 30, 2013, incorporating the Performance Standards, Mercury and Air Toxics Standards ("MATS") Limit, and associated compliance monitoring methods established by the consent decree for the [FPP] into LCRA's Clean Air Act Title V federal operating permit."  Dkt. 70 at 1.  LCRA explains that paragraph 26 of the consent decree provides that any party may move to terminate the consent

decree once LCRA has incorporated these aforementioned provisions into its Title V federal operating permit.  *Id.*  LCRA asserts that it has met all conditions for termination of the consent decree and moves for its termination.  *Id.*

Plaintiff responds that LCRA has not yet satisfied all of its obligations under the consent decree, particularly LCRA's obligation to demonstrate compliance with the specified emissions limits using the particulate matter continuous emissions monitoring systems ("CEMS") as required in paragraphs 13, 14, and 15 of the consent decree.  Dkt. 71 at 1.  Plaintiff asserts that although LCRA has fulfilled the obligation imposed in paragraph 16, it must also demonstrate that it has fulfilled the obligations in paragraphs 13, 14 and 15, and cannot terminate the consent decree until it has done so.  *Id.*  As to paragraph 13, plaintiff asserts that LCRA must install CEMS to continuously measure levels of filterable particulate matter (soot) emissions from the FPP's three main boilers, but that at the time the response was written, there was no indication that the soot emissions to be measured were in compliance with the consent decree's soot limits.  *Id.* at 2.  As to paragraph 14, plaintiff complains that LCRA has not correlated the CEMS emissions data with the manually-collected stack test data in accordance with the EPA-approved method called "Performance Specification 11."  *Id.*  Finally, plaintiff complains that LCRA has not complied with the requirement in paragraph 15 that the CEMS data be made publicly available.  *Id.*

Plaintiff also asks the court to let the consent decree run through its natural expiration on December 31, 2018 in order for plaintiff to obtain the CEMS data and for LCRA to demonstrate compliance with the terms of the consent decree.  *Id.* at 3.  Plaintiff's concern, should the court terminate the consent decree, is that LCRA might attempt to amend the permit by stripping out or voiding the permit's consent decree provisions, and plaintiff claims that LCRA is unwilling to provide any assurance that it would not attempt to so.  *Id.* at 2.  Plaintiff asserts that stripping out or

voiding the terms of the consent decree from LCRA's Title V permit before the requirements

contained in the consent decree paragraphs 13, 14 and 15 are achieved would deprive plaintiff of the

key benefit of the consent decree. *Id.* at 3.

LCRA responds that paragraph 26 only has one condition for termination, and that is

incorporating the consent decree provisions into the Title V federal operating permit for the FPP.

Dkt. 72 at 1.  LCRA also responds that paragraphs 13, 14 and 15 do not require it to demonstrate

compliance to plaintiff beyond the specific terms of the consent decree. *Id.* at 2.  LCRA asserts that

it has complied with all terms of the consent decree, and that the conditions are incorporated into its

Title V federal operating permit, which requires reporting of any deviations from the terms. *Id.*

LCRA argues that denying its motion essentially allows plaintiff to renegotiate the terms for

termination. *Id.* at 1, 3.

## II. ANALYSIS

The provisions of the consent decree that the parties dispute include paragraphs 13, 14, 15,

16 and 26.  These provisions read as follows.

Paragraphs 13 through 15 fall under the heading of "Particulate Matter Compliance

Monitoring."

> 13. On or before November 1, 2014, LCRA agrees to install a filterable [particulate matter ("PM")] CEMS.  LCRA agrees to operate the filterable PM CEMS at all times, except during malfunction, repairs and required quality assurance/quality control ("QAQC") activities.  Emissions from Unit 1, Unit 2, and Unit 3 during periods of startup, shutdown, or malfunction as those terms are defined in MATS as adopted by EPA at 77 Fed. Reg. 9304 *et seq.* (February 16, 2012), shall not be counted toward compliance with Performance Standards and/or MATS Limit.

> 14. On or before September 1, 2014, LCRA agrees to conduct PM Stack Tests for a minimum of three (3) two-hour test runs for each unit (i.e., Unit 1, Unit 2 and Unit 3).  The Stack Test for each unit will be used to identify the Stack Test emission rate for condensable PM for that unit.  A correlation of the PM CEMS data to manual reference methods data will be performed according to 40 C.F.R. Part 60, Appendix

B, Performance Specification 11. 40 C.F.R. Part 51, Appendix M, Reference Method 202 or 40 C.F.R. Part 60, Appendix A-3, Reference Method 5B, modified to include back-half, will be used for condensable PM during the stack tests. Reference Method 5B will be used for filterable PM during the Stack Tests. The Stack Test protocol will conform to applicable EPA and TCEQ requirements and guidance.

15. LCRA agrees to provide to plaintiffs a copy of the 2014 Stack Tests reports. LCRA also agrees to provide to Plaintiffs quarterly PM CEMS data, unless applicable Title V requirements require that such data be reported to the TCEQ and plaintiffs have public access to such data. LCRA agrees not to claim confidentiality for quarterly PM CEMS data.

Paragraph 16 falls under the heading of "Permitting."

16. On or before September 30, 2013, LCRA shall submit an application to incorporate the Performance Standards, MATS Limit, and associated compliance monitoring methods into the Title V operating permit for FPP.

Paragraph 26 falls under the heading of "Miscellaneous Terms."

26. This consent decree shall remain an enforceable order of the court until terminated pursuant to this paragraph. Any party may move for termination of this consent decree once LCRA has incorporated its provisions into the Title V operating permit for FPP. If no party moves for termination, the Consent Decree shall terminate automatically by its own terms on December 31, 2018.

Paragraph 26 clearly states that "[t]his consent decree shall remain an enforceable order of the Court until terminated pursuant to this paragraph." Dkt. 53 at 13. The method by which the consent decree is terminated is clear: "Any party may move for termination of the consent decree once LCRA has incorporated its provisions into the Tile V operating permit." Therefore, the plain language of the consent decree anticipates transferring the enforceability of the consent decree provisions from this court to the Title V operating permit, once the permit is updated.

LCRA has demonstrated that it has incorporated all of the terms of the consent decree into its Title V federal operating permit for the FPP, including paragraphs 13, 14 and 15. Dkts. 70-1 at 22–24 (describing the consent decree related permit conditions applicable to the FPP's Air Quality Permit); 70-2 at 95 (incorporating FPP Air Quality Permit at Dkt. 70-1 into LCRA's Title V Federal

Operating Permit).  Plaintiff does not dispute that the terms of the consent decree have been incorporated into LCRA's Title V federal operating permit as required by paragraph 16.  And, there are no other conditions placed on the termination of the consent decree.

Even if the consent decree allowed consideration of compliance with its terms before it could be terminated, plaintiff would not prevail.  First, the only requirements imposed in paragraphs 13 through 15 that require a report to plaintiff or the public are the reports required in paragraph 15.  It is not clear what other "demonstrated compliance" plaintiff seeks from LCRA that the consent degree requires.  And, LCRA has not only represented to this court that it has met all applicable provisions, LCRA has specifically addressed all but one of the requirements in paragraphs 13, 14, and 15.  Dkt. 72 at 2.  While LCRA's response does not specifically reference whether it had filed quarterly reports of the PM CEMS with plaintiffs or the TCEQ, the briefing on the pending motion occurred before the first quarterly report was due.  If a specific violation of the terms of the consent decree has occurred since December 2014, plaintiff has not alerted the court to such violations or otherwise tried to enforce the consent decree against LCRA through this court.  Moreover, all of the consent decree provisions have been incorporated into the FPP Air Quality Permit, including the reporting requirement that plaintiff complains was not followed: "The holder of this permit will provide quarterly PM CEMS data to TCEQ Region 11 for public access."  Dkt. 70-1 at 24.

Finally, plaintiff's concern that LCRA might attempt to amend the permit by stripping out or voiding the permit's consent decree provisions is not addressed by the consent decree, and the court sees no way that it can remedy these speculative concerns under the consent decree as written.

## III. CONCLUSION

For all these reasons, the motion to terminate the consent decree (Dkt. 53) is GRANTED.

It is so ORDERED.

Signed at Houston, Texas on July 22, 2015.

_____
Gray H. Miller
United States District Judge